941 F.2d 1010
 INTERSTATE MARKINGS, INC., a Florida corporation, Plaintiff-Appellant,
v.
MINGUS CONSTRUCTORS, INC., an Arizona corporation, et al.,
Defendant-counter-plaintiff-Appellee,
Aetna Casualty and Surety Company, Inc., a Connecticut
corporation, et al., Defendant-counter-claimant-Appellant.
 No. 89-16706.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 10, 1991.
Decided Aug. 16, 1991.
 
 William J. Downey and Scott E. Boehm, Rake, Copple, Downey & Black, Phoenix, Ariz., for plaintiff-appellant.
 Guy W. Bluff, Phoenix, Ariz., for defendant-counter-plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before HUG and POOLE, Circuit Judges, and ATKINS,* District Judge.
 HUG, Circuit Judge:
 
 
 1
 In this contract diversity action, appellants Interstate Markings, Inc. and its bonding company, Aetna Casualty and Surety Company, appeal the district court's judgment following a jury trial in favor of general contractor Mingus Constructors, Inc. Appellants contend that the jury's first verdict was ambiguous and that the district court erred when it recalled and reinstructed the jury prior to its second verdict. Appellants also contend that (1) they were entitled to judgment as a matter of law due to a number of contract defenses; (2) Mingus was not entitled to prejudgment interest; (3) the court instructed the jury improperly regarding damages; and (4) a new trial is warranted because Mingus' counsel made inappropriate remarks during his closing arguments. We affirm.
 
 I.
 
 2
 Mingus Constructors, Inc. ("Mingus") contracted to clean the Granite Reef Aqueduct, a 186-mile canal in the Colorado River, on November 15, 1983. One week later, Mingus entered into a subcontractor agreement with Interstate Markings, Inc. ("Interstate"). Interstate agreed to remove the old sealant, reseal the joints and cracks, and clean the canal. Mingus, however, retained responsibility for the initial cleaning of the canal in front of Interstate to remove mud, dirt, water and other debris to facilitate Interstate's extruding, sandblasting and resealing of the joints.
 
 
 3
 The subcontractor agreement provided that Mingus was obligated to supply sealant for the project. The parties, however, dispute whether the decision to purchase the sealant was made by Mingus alone or Interstate and Mingus jointly. In any event, Mingus signed an exclusive supplier contract with Edoco for the manufacture of a sealant. Interstate built three mechanical devices designed to extrude the old sealant, sandblast the joints and apply the new sealant.
 
 
 4
 Interstate experienced a number of problems in attempting to perform the contract. Mingus, however, continued precleaning the aqueduct. As a result, Mingus was, at times, several miles ahead and was forced to reclean portions of the aqueduct many times. Mingus eventually fired Interstate and hired Hunt Construction Company ("Hunt") to complete the job.
 
 
 5
 After completion of the job, a number of complaints, counter-claims, and third-party complaints were filed among the participants in the construction project. The claims relevant to this appeal are: (1) Mingus' claim against Interstate for breach of contract, (2) Mingus' claim against Aetna Casualty and Surety Company ("Aetna") on Interstate's performance bond, (3) Interstate's claim against Mingus for breach of contract, and (4) Aetna's claim against Mingus for wrongfully terminating Interstate and for breach of Interstate's subcontract. Following a six-week trial on these claims, the jury returned the following verdict:
 
 
 6
 WE, THE JURY, IN THE ABOVE ENTITLED AND NUMBERED CASE FIND:
 
 A. On the Mingus Claim:
 
 7
 1. In favor of Mingus Constructors, Inc. and against Interstate Markings, Inc. and assess damages in the sum of $____________.
 
 
 8
 2. In favor of Mingus Constructors, Inc. and against Aetna Casualty and Surety Company and assess damages in the sum of $853,330.
 
 
 9
 3. Against Mingus Constructors, Inc. and in favor of Interstate Markings, Inc. and Aetna Casualty and Surety Company.
 
 
 10
 _____ _____
 
 
 11
 yes no
 
 B. On the Interstate and Aetna Claims:
 
 12
 1. In favor of Interstate Markings, Inc. and against Mingus Constructors, Inc. and American Insurance Company and assess damages in the sum of $____________.
 
 
 13
 2. In favor of Aetna Casualty and Surety Company and against Mingus Constructors, Inc. and assess damages in the sum of $____________.
 
 
 14
 3. Against Interstate Markings, Inc. and Aetna Casualty and Surety Company and in favor of Mingus Constructors, Inc. and American Insurance Company
 
 
 15
 _____ _____
 
 
 16
 yes no
 
 
 17
 One day later, counsel for Aetna telephoned both counsel for Mingus and the court and pointed out that the jury failed to indicate liability as to Interstate. Aetna took the position that the verdict against Aetna was not valid absent a verdict against Interstate.
 
 
 18
 One week later, the district court, on its own initiative, recalled the jury. The district court resubmitted the matter to the jury with further instructions. These were addressed to the issue of whether Interstate was liable to Mingus as well as Aetna. The jury rendered a second verdict, in which it found Interstate also liable for the $853,330. Because we find the first verdict sufficient to support the judgment, we do not delve specifically into the facts and arguments concerning the additional proceedings before the jury and the second verdict.
 
 
 19
 Following a motion by Mingus for interest, costs, and attorneys' fees, the district court entered an order granting prejudgment interest in the amount of $317,343.80 and attorneys' fees in the amount of $300,000. An amended judgment was then entered in the amount of $1,470,673.80.
 
 II.
 
 20
 We first consider whether the original verdict rendered by the jury was sufficient to support the judgment entered by the court. Our interpretation of the original verdict rendered by the jury is assisted by considering the instructions that were given to the jury relative to the verdict form. The jury was told that the verdict form contained two parts. Part A related to the Mingus claim and Part B related to the claims of Interstate and Aetna. With regard to Part A, the Mingus claim, the jury was told that "there are three choices." Thus, the jury was instructed to pick one of the three alternatives, not to select more than one of the alternatives. Had the jury entered $853,330 on the lines and alternatives both 1 and 2, this could have left the impression that Mingus was to collect that amount of money from each of them. Instead, the jury most logically would have selected only alternative no. 2 if it found that both Interstate and Aetna were liable to Mingus, because the jury had been instructed in Jury Instruction 15 as follows:
 
 
 21
 Aetna's obligation on its performance bond was to guarantee Interstate's performance to Mingus. If you determine that Interstate materially breached its contract with Mingus and Aetna is not otherwise discharged or excused, then you must find that Aetna is liable to Mingus for certain damages.
 
 
 22
 Under that instruction the jury most logically would have concluded that if it found both Interstate and Aetna liable that it was to enter the amount of the judgment under choice no. 2, which in fact it did.
 
 
 23
 Thus, consistent with our obligation to read the verdict harmoniously with the jury instructions, see Toner for Toner v. Lederle Laboratories, 828 F.2d 510, 512 (9th Cir.1987), cert. denied, 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988), and with the general rule that the jury's finding of liability against Aetna assumes the factual prerequisite that Interstate was also liable, see, e.g., Burgess v. Premier Corp., 727 F.2d 826, 831 (9th Cir.1984), we hold that the jury intended to hold Interstate liable to Mingus for breach of contract.
 
 
 24
 We conclude that it is sufficiently clear from a plain reading of the jury's first verdict form and the instructions given to them that the jury intended to find both Interstate and Aetna liable to Mingus. We therefore need not consider the subsequent recall of the jury and the proceedings had thereafter.
 
 III.
 A. Contract Defenses
 
 25
 Interstate and Aetna contend that the district court erred by refusing to enter judgment in their favor on the basis of their affirmative defense of impossibility. We disagree.
 
 
 26
 At trial, Mingus presented evidence that Interstate could have found another supplier, could have used a combination of sealants to get the job done, and otherwise could have been more efficient on the job. This factual issue was properly before the jury. By finding Interstate liable, the jury necessarily rejected Interstate's claim that it was unable to perform the job because it was impossible. See Burgess, 727 F.2d at 831.
 
 
 27
 Similarly, with respect to Interstate's defense that Mingus failed to satisfy conditions precedent, several facts relevant to the resolution of this issue were submitted to the jury before it rendered its verdict. Mingus submitted evidence that it did not breach its obligation to provide sealant, and that it halted the progress payments only after Interstate's lack of performance. Thus, Interstate and Aetna's argument that Mingus failed to satisfy a condition precedent was a jury question decided in Mingus' favor. See id.
 
 
 28
 Appellants also contend that the district court erred in refusing to enter judgment in their favor because the evidence was undisputed that Mingus anticipatorily repudiated the subcontractor agreement. Appellants argue that Mingus anticipatorily breached by failing to supply the sealant and by failing to pay Interstate for its work. However, there was evidence that Mingus did not fail to pay Interstate until after Interstate breached its part of the agreement. Further, there was evidence that Mingus was not responsible for supplying the sealant. Again, this was a disputed factual question which the jury resolved in its verdict.
 
 B. Damages
 
 29
 Appellants raises several issues regarding damages. First, they contend that the district court erred when it allowed the jury to consider Mingus' claim for liquidated damages under Paragraph H of the Subcontractor Agreement. Mingus responds that the issue was properly submitted to the jury and that the jury's verdict should be upheld because 1) the evidence supported a finding that the provision was valid, and 2) there is no way to determine whether the jury granted the claim.
 
 
 30
 The contract provided that upon default by Interstate, Interstate shall pay to Mingus the cost required to complete the project minus the unpaid balance on the contract, such expense to include a fifteen percent mark-up for general overhead and a ten percent mark-up for profit. The district court concluded that the amount was not unreasonable as a matter of law and instructed the jury to decide as a matter of fact whether the provision was reasonable.
 
 
 31
 Under Arizona law, a contractual provision for liquidated damages is enforceable only in an amount that is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. See Larson-Hegstrom & Associates v. Jeffries, 145 Ariz. 329, 333, 701 P.2d 587, 591 (App.1985). A term fixing unreasonably large liquidated damages is unenforceable on the grounds of public policy as a penalty. Id. The jury, not the district court, awarded the damages. Appellants point to no convincing evidence to support their claim that the liquidated damages were unreasonable as a matter of law. The jury's factual implicit determination that the liquidated damages were reasonable must be upheld.
 
 
 32
 Second, appellants contend that the district court erred when it awarded prejudgment interest because Mingus' damage award was not liquidated. Mingus responds that the damages were liquidated and that they were therefore entitled to a prejudgment interest award as a matter of right.
 
 
 33
 Under Arizona law, a claim is liquidated for purposes of awarding prejudgment interest if the amount of damages can be computed with exactness. Appellants point to no evidence that the estimates were inaccurately done. There is no evidence that the district court abused its discretion when it awarded the prejudgment interest. See Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 794 (9th Cir.1986).
 
 
 34
 Third, appellants contend that the district court erred when it allowed Mingus to hold Interstate responsible for all of Mingus' losses without affirmatively showing that Interstate caused the damages. This was a matter properly submitted to the jury under appropriate instructions.
 
 IV.
 Propriety of Rebuttal Argument
 
 35
 Appellants contend that the district court erred when it refused to grant a new trial on the ground that Mingus' rebuttal argument was improper. Appellants argue that Mingus' attorney's repeated references to the phrase "Aetna, we never met ya" were designed to introduce extraneous matters in order to improperly influence the jury.
 
 
 36
 A new trial is warranted only if counsel's misconduct affected the verdict. In general, the trial court is presumed to be in a better position than the court of appeals to gauge the prejudicial effect of improper comments. Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1286 (9th Cir.1984). Even if inappropriate, counsel's statement in this case does not warrant a new trial. The comment simply was not sufficiently prejudicial as to warrant a new trial. Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir.1985); Barzelis v. Kulikowski, 418 F.2d 869, 870 (9th Cir.1969). The district court did not abuse its discretion when it denied the new trial motion.
 
 V.
 Attorneys' Fees
 
 37
 Both parties request attorneys' fees. Pursuant to the subcontract agreement between Interstate and Mingus, reasonable attorneys' fees for this appeal are awarded to Mingus as the prevailing party to this litigation. Mingus also seeks "damages and costs," pursuant to Fed.R.App.P. 38, on the ground that Aetna should not have raised several issues addressed in this appeal. We exercise our discretion to decline any such award.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida, sitting by designation