**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: LATE FEE AND OVER-LIMIT FEE LITIGATION, | No. 08-15218 |
| | D.C. No. CV-07-00634-SBA |
| ANDREW T. PIÑON; BETTY SIMM; CATHY SIMM; SARA PRENTISS-SHAW; AUDREE HALASZ; GWEN MARTIN; CELESTE BRACKLEY; MARILYN FOSTER-NEMEC; AARON GONZALEZ; ELIZABETH YOUNG, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellants*, | OPINION |
| v. | |
| BANK OF AMERICA, NA; BANK OF AMERICA CORPORATION; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; JPMORGAN CHASE & CO.; CITIBANK, NA; CITIGROUP, INC.; HSBC NORTH AMERICA HOLDINGS, INC.; HSBC FINANCE CORP.; WELLS FARGO & COMPANY LONG TERM DISABILITY PLAN; JPMORGAN CHASE BANK NA; CHASE BANK USA, N.A.; FEDERAL DEPOSIT INSURANCE CORPORATION, *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
February 11, 2013—San Francisco, California

Filed January 21, 2014

Before: Dorothy W. Nelson, Stephen Reinhardt,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge D.W. Nelson;
Concurrence by Judge Reinhardt;
Concurrence by Judge D.W. Nelson

## SUMMARY[*]

### National Bank Act

The panel affirmed the district court's dismissal for failure to state a claim of an action brought under the National Bank Act and the Depository Institutions Deregulation and Monetary Control Act by a class of cardholders who challenged credit card overlimit fees and late fees on constitutional grounds.

The panel held that the substantive due process jurisprudence developed to limit punitive damages in the tort

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

context does not apply to contractual penalties such as credit card penalty fees.  The panel held that because the fees were permissible under the NBA and the DIDMCA, the district court did not err in dismissing the complaint.

Concurring in the judgment, Judge Reinhardt wrote that the Supreme Court would be well advised to apply its substantive due process rule to prevent disproportionate penalties from being imposed on consumers when they breach contracts of adhesion.

Concurring, Judge Nelson wrote separately to join Judge Reinhardt's concurrence.

## COUNSEL

Seana Shiffrin (argued), UCLA School of Law, Los Angeles, California; Patrick J. Coughlin, Frank J. Janecek, Jr., Elisabeth A. Bowman, and Mary Lynne Calkins, Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, California; and Tyler R. Meade and Michael L. Schrag, Meade & Schrag LLP, Berkeley, California, for Plaintiffs-Appellants.

Rebecca J.K. Gelfond, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; and Christopher R. Lipsett and Noah Adam Levine (argued), Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, for Defendants-Appellees.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Suppose you have an ordinary consumer credit card. You are committed to fiscal rectitude, so you pay your balance in full on the due date each month and never exceed your credit limit. One particularly busy month, though, you lose track of how much you have spent and you charge a purchase that pushes your balance a few dollars beyond your credit limit. You compound the problem when you make your monthly payment three days late.

The result is unpleasant. The card issuer charges you a $39 fee for the late payment and another $39 fee for exceeding the credit limit. Worse, the interest rate on the late balance instantly doubles as the issuer imposes the "penalty rate." Your small mistakes prove very costly.

Most Americans will find this scenario familiar. Credit card penalty fees have provoked intense consumer agita and, increasingly of late, substantial legislative interest.[1] With certain exceptions, such fees are generally authorized by federal statute.

In this appeal, a class of cardholders who paid credit card fees challenge those fees on constitutional grounds. They contend that the fees are analogous to punitive damages

---

[1] *See, e.g.*, the Credit Card Accountability Responsibility and Disclosure Act (Credit CARD Act), Pub. L. No. 111-24, § 102(a), 123 Stat. 1734, 1739 (2009) (codified at 15 U.S.C. § 1637(k)(7)) (banning card issuers from charging more than one overlimit fee in a single billing cycle).

imposed in the tort context, and that they are therefore subject to the substantive due process limits described in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and subsequent cases.  We must decide whether substantive due process so constrains credit card fees.

The jurisprudence developed to limit punitive damages in the tort context does not apply to contractual penalties, such as the credit card fees at issue in this case.  We therefore affirm the district court's dismissal of the complaint.

## I. Facts and Procedural History

The Appellants (the "Cardholders") are a class of consumers who hold credit cards with one or more of the Appellees, which are all among the largest issuers of consumer credit cards in the United States.  The contracts between card issuers and cardholders require customers to make payments on or before a predetermined date each month.  The contracts also limit the total credit available to a cardholder.

The Cardholders alleged that the card issuers charged them penalty fees for making purchases in excess of their cards' credit limits ("overlimit fees") or for making late payments on monthly balances ("late fees").  These fees, which are disclosed in the contracts between card issuers and their customers, are mostly uniform from issuer to issuer and are typically between $15 and $39.  These amounts, the Cardholders alleged, vastly exceed the harm that issuers actually suffer when their customers exceed their credit limits or make late payments.

The complaint raised ten causes of action, five of which are now before us on appeal.  Counts I–IV alleged that the late and overlimit fees the Appellees charged exceeded the amounts authorized by the National Bank Act, 12 U.S.C. §§ 85–86, and the Depository Institutions Deregulation and Monetary Control Act ("DIDMCA"), 12 U.S.C. § 1831d(a). Specifically, the complaint alleged that the National Bank Act and DIDMCA cannot authorize fees that constitute unconstitutionally excessive punitive damages.  Count VI alleged that the fees violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

The Appellees moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  The district court granted the motion and dismissed the complaint in its entirety.  This appeal followed.

## II.  Standard of Review

We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).

## III.  Statutory Framework

The National Bank Act of 1864[2] provides that a national bank may charge its customers "interest at the rate allowed by the laws of the State . . . where the bank is located." 12 U.S.C. § 85.  This provision permits a national bank to charge out-of-state cardholders any interest rate allowed by

---

[2]  All of the Appellees are governed by the National Bank Act with the exception of Washington Mutual Bank, which is instead subject to the DIDMCA.

the bank's home state. *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 313–14 (1978). That is, national banks may "export" the regulatory regime of the state in which they are located and impose it on customers residing in states with more consumer-friendly regulations. The DIDMCA has a parallel provision. 12 U.S.C. § 1831d(a) (permitting FDIC-insured state banks to charge interest "at the rate allowed by the laws of the State . . . where the bank is located").

Federal regulations make clear that "interest," at least as the term is used in 12 U.S.C. §§ 85 and 1831d, encompasses more than just the annual percentage rate charged on cardholders' carried balances. It also includes "any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended," including "late fees" and "overlimit fees." 12 C.F.R. § 7.4001(a); *see also Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 747 (1996) (deferring to this interpretation of "interest"). Hence, federal law permits card issuers to charge late and overlimit fees to all of their customers as long as the fees are legal in the issuers' home states.

The Cardholders seek to recover under the remedial provisions of the National Bank Act and the DIDMCA, which permit a borrower to recover damages if she was charged interest in excess of what the statutes allow. *See* 12 U.S.C. § 86 (National Bank Act); *id.* § 1831d(b) (DIDMCA). The Cardholders argue that the fees violate their constitutional due process rights because, like unconstitutional punitive damages awards made in tort lawsuits, the fees greatly exceed the actual economic harm caused by a late payment or

overlimit charge.  *See Gore*, 517 U.S. at 583 (noting that an award of punitive damages many times greater than the compensatory damage award will "raise a suspicious judicial eyebrow") (internal quotation marks and citation omitted). Thus, if the fees are unconstitutional, they cannot be authorized by state statute or exported to other states by the National Bank Act.

## IV.  Analysis

### A.  Due Process Claim

Plaintiffs are forthright in their argument: they seek to apply principles of substantive due process developed by the Supreme Court in the tort context to liquidated damages clauses in private contracts.  Liquidated damages are customarily unenforceable as penalties when they are in excess of actual damage caused by a contractual breach.  The similarities and differences between liquidated damages and punitive damages therefore govern the outcome of this case.

Since early in the development of the common law of contract, courts have endeavored to distinguish between enforceable "liquidated damages" clauses and unenforceable "penalty" clauses.  *See Sun Printing & Publ'g Ass'n v. Moore*, 183 U.S. 642, 660–74 (1902) (describing the history of the doctrine).  Liquidated damages are a predetermined sum which a party to a contract agrees to pay in the event of his breach.  *See* Williston on Contracts § 65:1 (4th ed. 2013). A liquidated damages provision in a contract is enforceable if the damages flowing from the breach are likely to be difficult to ascertain or prove at the time of the agreement, and the liquidated sum represents a good faith effort by the

parties to appraise the benefit of the bargain.  *Id.*; *see also, e.g.*, U.C.C. § 2-718(1).

A penalty, on the other hand, is a contract provision wherein a party agrees to pay a sum in the event of a breach, but which is designed not to estimate probable actual damages but to punish the breaching party or coerce his performance.  *See* Williston on Contracts § 65:1 (4th ed. 2013).  Such clauses are generally not enforceable.  *See, e.g.*, *Interstate Markings, Inc. v. Mingus Constructors, Inc.*, 941 F.2d 1010, 1014 (9th Cir. 1991) (applying Arizona law).

Like the common-law rule against contractual penalty clauses, punitive damages have an ancient provenance: the Supreme Court noted punitive-damages-like provisions in the Code of Hammurabi.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 491 (2008) (quoting the Code of Hammurabi's goat-stealing regulations at § 8, p. 13 (R. Harper ed. 1904)).  Punitive damages are most familiar in tort.  *See Day v. Woodworth*, 54 U.S. (13 How.) 363, 371 (1851) ("It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant . . . .").  Indeed, punitive damages are generally not recoverable for breach of contract unless the conduct constituting the breach is also a tort.  *See* Restatement (Second) of Contracts § 355.[3]

---

[3] Some jurisdictions permit an award of punitive damages for nontortious breach of contract in certain limited circumstances, such as when the breach involves a wanton or malicious violation of a fiduciary duty. *See, e.g.*, *Brown v. Coates*, 253 F.2d 36, 40–41 (D.C. Cir. 1958) (holding punitive damages to be appropriate in a case involving a malevolent real-estate agent).

While practice varies from jurisdiction to jurisdiction, punitive damages have some universal characteristics. They are "aimed not at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping*, 554 U.S. at 492. Consequently, they are "awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit." Black's Law Dictionary 448 (9th ed. 2009); *see also Day*, 54 U.S. (13 How.) at 371 (noting that punitive damages are designed to reflect "the enormity of [an] offence" and to censure the "atrocity of the defendant's conduct"). For that reason, many jurisdictions disallow an award of punitive damages without an award of actual damages. *See, e.g.*, *Bldg. Structures, Inc. v. Young*, 968 P.2d 1287, 1289 (Or. 1998) ("[A] jury may not award punitive damages in the absence of an award of actual damages to the plaintiff."); *see also Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456, 465 (9th Cir. 2010) (noting that under the federal common law, punitive damages are recoverable in the absence of actual damages only where authorized by statute). They are awarded at the discretion of the trier of fact, whether judge or jury. *See* Restatement (Second) of Torts § 908 cmt. d. Finally, punitive damages are not designed to be a form of supercompensation for plaintiffs. Rather, punitive damages "further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *Gore*, 517 U.S. at 568. The Supreme Court has characterized this state interest as "quasi-criminal." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001).

There is little reason to doubt that "[t]o the extent punitive damages are permitted in contract actions, such an award is subject to the limitations of the federal Constitution." 11 Corbin on Contracts § 59.2 (2013). The Cardholders allege

that the penalty fees in this case are purely punitive—the banks are compensated for the lost time value and collection costs associated with any breach by high penalty interest rates, making the overage charges a form of double-dipping. But considering that the penalty clauses at issue originate from the parties' private—albeit adhesive—contracts, they are distinct from the jury-determined punitive damages awards at issue in *Gore* and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

We therefore conclude that the due process analysis developed in the context of jury-awarded punitive damages is not applicable to contractual penalty clauses. *See, e.g.*, *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 413 (1947) (describing contractual penalties as oppressive and unjust based on common law of contracts, not constitutional principles).

## B.  Unfair Competition Law Claim

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, makes violations of other state and federal laws "independently actionable as unfair competitive practices." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (citation omitted). Because we conclude that the issuers' conduct did not violate the National Bank Act or the DIDMCA, there is no derivative liability under the Unfair Competition Law.

## V.  Conclusion

Because constitutional due process jurisprudence does not prevent enforcement of excessive penalty clauses in private contracts, and the fees were permissible under the National

Bank Act and the DIDMCA, the district court did not err in dismissing the complaint.

**AFFIRMED.**

---

REINHARDT, Circuit Judge, concurring in the judgment:

I concur, reluctantly. The Supreme Court has recently discovered that the Constitution prevents courts from imposing disproportionate punitive damages in tort cases. If the Court continues to adhere to its newfound view, it would be well advised to apply the same rule to prevent disproportionate penalties from being imposed on consumers when they breach contracts of adhesion.[1] Consumers must frequently enter into such one-sided contracts if they are to obtain many of the practical necessities of modern life, such as credit cards, cellular phones, utilities, and other vital consumer goods. Applied to such contracts, the Court's most recent substantive due process rule—which has to date served primarily to protect wealthy corporations from liability for repeated wrongdoing—would also protect ordinary consumers from paying excessive court-enforced damages for

---

[1] Punitive damages are not awarded in contract actions, except insofar as contract actions "contain elements that enable the court to regard them as falling within the field of tort." 11 Corbin on Contracts § 59.2 (2013). When punitive damages are awarded in hybrid contract-tort actions, they are subject to the constitutional limitations imposed on punitive damages in tort cases. *Id.* Applying the Court's new constitutional rule to contracts of adhesion would expand the scope of punitive damages limitation.

minimal breaches of contract.[2]  These excessive penalties are currently paid to large national business entities which, each year, collect billions of dollars in late fees alone.  They reflect a compensatory to penalty damages ratio higher than 1 to 100,[3] which far exceeds the ratio of non-punitive to punitive damages that the Court has held to be prohibited by the Constitution in tort cases.  In sum, if due process is violated when courts award disproportionate punitive damages in the tort context, due process is equally violated when courts enforce the punitive and substantially more disproportionate penalty clauses in contracts of adhesion.

I ultimately agree with the opinion of the court, however, that the Constitution has not yet been so interpreted.  Thus, I cannot disagree with the ultimate decision.  I do believe, however, that the proposition I discuss deserves further exploration and analysis, and that, should the new Supreme Court doctrine continue in effect, the extension of that doctrine as requested by Cardholders should eventually become the law under the Due Process Clause.

\*

Constitutional interpretation is an evolutionary process.  "[T]hat our understanding of the Constitution does change from time to time has been settled since John Marshall breathed life into its text." *Roper v. Simmons*, 543 U.S. 551, 587 (2005) (Stevens, J., concurring).  Otherwise, the Constitution's "general principles would have little value, and

---

[2]     *See* Seana Valentine Shiffrin, *Are Credit Card Late Fees Unconstitutional?*, 15 Wm. & Mary Bill Rts. J. 457, 460 (2006).

[3]   *See id.* at 477–80.

be converted by precedent into impotent and lifeless formulas." *Weems v. United States*, 217 U.S. 349, 373 (1910). Many, if not most, of the Supreme Court's greatest decisions are those in which the Court has interpreted the Constitution as a living document, capable of adapting to changing times. *See, e.g.*, *United States v. Windsor*, 133 S. Ct. 2675 (2013); *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954); *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

This is a constitutional case of first impression. It is an attempt by a group of cardholders to have a new constitutional doctrine applied even-handedly. Their proposed rule would protect consumers from excessive penalties just as the current rule protects corporate and business entities from excessive punitive damages. Constitutional evolution requires continuous evaluation of newly established principles to ensure that changes occur within the framework of fairness and equality. Such must be the case here.

Until recently, no one other than a few law professors would have thought that substantive due process significantly limited punitive damages awards or determined which punitive verdicts against corporate tort-feasors were too large. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 602 (1996) (Scalia, J., dissenting) (describing "federal punitive damages law" as a "new field created by today's decision"). Indeed, the Court declared decades ago its "abandonment of the use of the 'vague contours' of the Due Process Clause to nullify laws which a majority of the Court believed to be economically unwise." *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963). *See also Lochner v. New York*, 198 U.S. 45, 75 (1905) (Holmes, J., dissenting) ("[A] Constitution is not

intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the state or of *laissez faire.*").  Nor did it appear until very recently that the "vague contours" of the Due Process Clause served to measure the constitutionality of particular punitive damages awards.

Beginning in the mid-1980s, however, a smattering of Supreme Court dicta began to suggest that one or more Justices believed that such limitations might be necessary as a constitutional response to a growing trend of punitive damages "run wild."  *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 9–12 (1991) (collecting dicta from "recent years" in which "[the] Court and individual Justices" "expressed doubts about the constitutionality of certain punitive damages awards").  In *Haslip*, the Court began developing a new and (now) robust jurisprudence in which awards of punitive damages in the tort context are examined to determine whether they comport with due process.  *See Haslip*, 499 U.S. at 18 (suggesting the possibility that punitive damage awards in which jurors are given unlimited discretion "jar one's constitutional sensibilities," but finding no constitutional flaw with a punitive damages award 200 times greater than the compensatory damages awarded); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993) (plurality opinion) (citing *Haslip* for the proposition that due process might constrain the size of some punitive damages awards, but upholding an award 500 times in excess of actual damages); *BMW*, 517 U.S. at 585–86 (holding, for the first time, that a punitive damages award was "grossly excessive" and therefore violated due process where the award was 200 times greater than the actual damages); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (concluding, somewhat surprisingly, that "[o]ur jurisprudence and the

principles it has now established demonstrate . . . that, in practice, few [punitive] awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process," and citing a one-to-four ratio between compensatory and punitive damages as a non-binding but "instructive" constitutional line). Regardless of the impulses that motivated the Court to adopt its new constitutional doctrine, to date that doctrine has served primarily to protect large corporations from liability in cases in which they have repeatedly engaged in patterns of misconduct against vulnerable individuals.[4]

Whether or not the Court's discovery that the Constitution limits punitive damages is well founded, it is unlikely that the Due Process Clause was intended to operate as inequitably as it does at present. Big businesses are protected against "excessive" punitive damages awards for their willful misconduct, even as consumers are afforded no constitutional protection against disproportionate damages for breaches of contracts of adhesion—contracts that are not voluntary in any worthwhile sense of the term. Although the ultimate cost to each consumer may be relatively small, the benefits to credit card companies of such excessive punishment for minor breaches of contract are significant: in 2002, for example, credit card companies collected $7.3 billion in late fees. *See* Shiffrin, *Are Credit Card Law Fees Unconstitutional?*, 15 Wm. & Mary Bill Rts. J. at 460.

The Court's punitive damages doctrine has both procedural and substantive aspects. *See, e.g.*, *State Farm*,

---

[4] *See, e.g.*, *Philip Morris USA v. Williams*, 549 U.S. 346 (2007). *See also* Martha T. McCluskey, *Constitutionalizing Class Inequality: Due Process in State Farm*, 56 Buff. L. Rev. 1035 (2008).

538 U.S. at 416 ("[T]here are procedural and substantive constitutional limitations on [punitive damage] awards."). The procedural aspect—which principally involves fair notice of the extent of the penalty that the state may impose—is not at issue here.[5]  The substantive aspect, in contrast, is directly implicated.    This critical part of the Court's new jurisprudence provides that punitive damages may not be "grossly excessive" with respect to the actual harm caused by the tortfeasor because such disproportionate awards "further[] no legitimate purpose and constitute[] an arbitrary deprivation of property." *State Farm*, 538 U.S. at 416; *see Gore*, 517 U.S. at 596 (Breyer, J., concurring) ("The severe lack of proportionality between the size of the award and the underlying punitive damages objectives shows that the award falls into the category of 'gross excessiveness' . . . ."). The Court has explained that there is something "jar[ring]" to one's "constitutional sensibilities" about a court sanctioning any sort of punishment in a civil case when that punishment vastly exceeds the harm done by the party being punished. *Haslip*, 499 U.S. at 18.  Such a jarring of constitutional sensibilities may occur even when the penalties imposed are foreseeable. *See St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919).

These principles, if indeed embodied in the Constitution, should also limit courts' ability to enforce grossly excessive liquidated damages provisions that inflict punishment upon consumers far in excess of any damage that they have caused

---

[5]   As the Cardholders concede, the penalties imposed in contracts of adhesion, even if disproportionate, are known in advance.

by minimally breaching their contracts of adhesion.[6]    A grossly disproportionate punishment is a grossly disproportionate punishment, regardless of whether the breaching party has previously "acquiesced" to such punishment—to the extent, that is, that a signatory to a contract of adhesion can ever be said to have "acquiesced" to all of its terms.[7]  Substantive due process should, at the very least, bar judicial enforcement of contractual penalty clauses when such clauses are so disproportionate to the damage caused by the breach that the damages would be impermissible as civil penalties in the tort context.[8]   This would hardly be the first time that courts refused to enforce private contracts because such enforcement would constitute

---

[6] In cases where payments are an hour to a few days late, the only actual damage to a credit card company would be the lost time-value of money, since it typically would not issue collection letters or phone calls on such a brief time frame and would thus incur no expense, however minimal, as a result.   But the lost time-value of the money is usually already compensated for by the interest on the balance, which is often increased when late fees are imposed.  In such cases, the compensatory-punitive damages ratio often lands far above ratios that would undoubtedly be deemed invalid in the tort context. *See* Shiffrin, *Are Credit Card Late Fees Unconstitutional?*, 15 Wm. & Mary Bill Rts. J. at 477–80.

[7] Consumers presented with these contracts must either "agree" to their harsh terms or lives without necessities of modern life, including access to credit, utilities, and the principal means of communication.

[8] The fact that the contract terms at issue are often labeled liquidated damages provisions is irrelevant.  When provisions of contracts of adhesion require the imposition of monetary punishment that is punitive in character and grossly disproportionate, they may not be enforced.

unconstitutional state action.   *Cf. Shelley v. Kraemer*, 334 U.S. 1, 20 (1948).[9]

The judiciary is just beginning to explore the principles that the Court has offered in justification of its new constitutional rule and the time for an expansion of its punitive damages jurisprudence may not yet have arrived. I believe, however, that in the end the principles of fairness and equality will dictate that consumers are entitled to (at least) the same constitutional rights as corporations.

D.W. NELSON, Senior Circuit Judge, concurring:

I write separately to join Judge Reinhardt's concurrence, although I agree that the district court reached the correct result under currently applicable law and should be affirmed.

---

[9] Cardholders also offer an alternative theory of state action. They argue that state statutes abrogating the common law prohibition on penalty clauses, taken in conjunction with regulations promulgated pursuant to the National Bank Act which allow credit card companies to export the law of their home states, permit the imposition of the disproportionate penalties in violation of the Constitution. Under common law, they argue, this problem would not arise because such fees would constitute an unlawful penalty clause. *See* Shiffrin, *Are Credit Card Late Fees Unconstitutional?*, 15 Wm. & Mary Bill Rts. J. at 487–91.