OPINION
D.W. NELSON, Senior Circuit Judge:
Suppose you have an ordinary consumer credit card. You are committed to fiscal rectitude, so you pay your balance in full on the due date each month and never exceed your credit limit. One particularly busy month, though, you lose track of how much you have spent and you charge a purchase that pushes your balance a few dollars beyond your credit limit. You compound the problem when you make your monthly payment three days late.
The result is unpleasant. The card issuer charges you a $39 fee for the late payment and another $39 fee for exceeding the credit limit. Worse, the interest rate on the late balance instantly doubles as the issuer imposes the “penalty rate.” Your small mistakes prove very costly.
Most Americans will find this scenario familiar. Credit card penalty fees have provoked intense consumer agita and, increasingly of late, substantial legislative interest.[1] With certain exceptions, such fees are generally authorized by federal statute.
In this appeal, a class of cardholders who paid credit card fees challenge those fees on constitutional grounds. They contend that the fees are analogous to punitive damages imposed in the tort context, and that they are therefore subject to the substantive due process limits described in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and subsequent cases. We must decide whether substantive due process so constrains credit card fees.
The jurisprudence developed to limit punitive damages in the tort context does not apply to contractual penalties, such as the credit card fees at issue in this case. We therefore affirm the district court’s dismissal of the complaint.
I. Facts and Procedural History
The Appellants (the “Cardholders”) are a class of consumers who hold credit cards with one or more of the Appellees, which are all among the largest issuers of consumer credit cards in the United States. The contracts between card issuers and cardholders require customers to make payments on or before a predetermined date each month. The contracts also limit the total credit available to a cardholder.
The Cardholders alleged that the card issuers charged them penalty fees for making purchases in excess of their cards’ credit limits (“overlimit fees”) or for making late payments on monthly balances (“late fees”). These fees, which are disclosed in the contracts between card issuers and their customers, are mostly uniform from issuer to issuer and are typically between $15 and $39. These *1025 amounts, the Cardholders alleged, vastly exceed the harm that issuers actually suffer when their customers exceed their credit limits or make late payments.
The complaint raised ten causes of action, five of which are now before us on appeal. Counts I-IV alleged that the late and overlimit fees the Appellees charged exceeded the amounts authorized by the National Bank Act, 12 U.S.C. §§ 85-86, and the Depository Institutions Deregulation and Monetary Control Act (“DIDM-CA”), 12 U.S.C. § 1831d(a). Specifically, the complaint alleged that the National Bank Act and DIDMCA cannot authorize fees that constitute unconstitutionally excessive punitive damages. Count VI alleged that the fees violated California’s Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.
The Appellees moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion and dismissed the complaint in its entirety. This appeal followed.
II. Standard of Review
We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir.2011).
III. Statutory Framework
The National Bank Act of 1864[2] provides that a national bank may charge its customers “interest at the rate allowed by the laws of the State ... where the bank is located.” 12 U.S.C. § 85. This provision permits a national bank to charge out-of-state cardholders any interest rate allowed by the bank’s home state. Marquette Nat’l Bank of Minneapolis v. First of Omaha Serv. Corp., 439 U.S. 299, 313-14, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978). That is, national banks may “export” the regulatory regime of the state in which they are located and impose it on customers residing in states with more consumer-friendly regulations. The DIDMCA has a parallel provision. 12 U.S.C. § 1831d(a) (permitting FDIC-insured state banks to charge interest “at the rate allowed by the laws of the State ... where the bank is located”).
Federal regulations make clear that “interest,” at least as the term is used in 12 U.S.C. §§ 85 and 1831d, encompasses more than just the annual percentage rate charged on cardholders’ carried balances. It also includes “any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended,” including “late fees” and “overlimit fees.” 12 C.F.R. § 7.4001(a); see also Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 747, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (deferring to this interpretation of “interest”). Hence, federal law permits card issuers to charge late and overlimit fees to all of their customers as long as the fees are legal in the issuers’ home states.
The Cardholders seek to recover under the remedial provisions of the National Bank Act and the DIDMCA, which permit a borrower to recover damages if she was charged interest in excess of what the statutes allow. See 12 U.S.C. § 86 (National Bank Act); id. § 1831d(b) (DIDM-CA). The Cardholders argue that the fees violate their constitutional due process rights because, like unconstitutional punitive damages awards made in tort *1026 lawsuits, the fees greatly exceed the actual economic harm caused by a late payment or overlimit charge. See Gore, 517 U.S. at 583, 116 S.Ct. 1589 (noting that an award of punitive damages many times greater than the compensatory damage award will “raise a suspicious judicial eyebrow”) (internal quotation marks and citation omitted). Thus, if the fees are unconstitutional, they cannot be authorized by state statute or exported to other states by the National Bank Act.
IV. Analysis
A. Due Process Claim
Plaintiffs are forthright in their argument: they seek to apply principles of substantive due process developed by the Supreme Court in the tort context to liquidated damages clauses in private contracts. Liquidated damages are customarily unenforceable as-penalties when they are in excess of actual damage caused by a contractual breach. The similarities and differences between liquidated damages and punitive damages therefore govern the outcome of this case.
Since early in the development of the common law of contract, courts have endeavored to distinguish between enforceable “liquidated damages” clauses and unenforceable “penalty” clauses. See Sun Printing & Publ’g Ass’n v. Moore, 183 U.S. 642, 660-74, 22 S.Ct. 240, 46 L.Ed. 366 (1902) (describing the history of the doctrine). Liquidated damages are a predetermined sum which a party to a contract agrees to pay in the event of his breach. See Williston on Contracts § 65:1 (4th ed.2013). A liquidated damages provision in a contract is enforceable if the damages flowing from the breach are likely to be difficult to ascertain or prove at the time of the agreement, and the liquidated sum represents a good faith effort by the parties to appraise the benefit of the bargain. Id.; see also, e.g., U.C.C. § 2-718(1).
A penalty, on the other hand, is a contract provision wherein a party agrees to pay a sum in the event of a breach, but which is designed not to estimate probable actual damages but to punish the breaching party or coerce his performance. See Williston on Contracts § 65:1 (4th ed.2013). Such clauses are generally not enforceable. See, e.g., Interstate Markings, Inc. v. Mingus Constructors, Inc., 941 F.2d 1010, 1014 (9th Cir.1991) (applying Arizona law).
Like the common-law rule against contractual penalty clauses, punitive damages have an ancient provenance: the Supreme Court noted punitive-damages-like provisions in the Code of Hammurabi. Exxon Shipping Co. v. Baker, 554 U.S. 471, 491, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (quoting the Code of Hammurabi’s goat-stealing regulations at § 8, p. 13 (R. Harper ed.1904)). Punitive damages are most familiar in tort. See Day v. Woodworth, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1851) (“It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant....”). Indeed, punitive damages are generally not recoverable for breach of contract unless the conduct constituting the breach is also a tort. See Restatement (Second) of Contracts § 355.[3]
*1027 While practice varies from jurisdiction to jurisdiction, punitive damages have some universal characteristics. They are “aimed not at compensation but principally at retribution and deterring harmful conduct.” Exxon Shipping, 554 U.S. at 492, 128 S.Ct. 2605. Consequently, they are “awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit.” Black’s Law Dictionary 448 (9th ed.2009); see also Day, 54 U.S. (13 How.) at 371 (noting that punitive damages are designed to reflect “the enormity of [an] offence” and to censure the “atrocity of the defendant’s conduct”). For that reason, many jurisdictions disallow an award of punitive damages without an award of actual damages. See, e.g., Bldg. Structures, Inc. v. Young, 328 Or. 100, 968 P.2d 1287, 1289 (1998) (“[A] jury may not award punitive damages in the absence of an award of actual damages to the plaintiff.”); see also Orange Blossom Ltd. P’ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal. Sunbelt Developers, Inc.), 608 F.3d 456, 465 (9th Cir.2010) (noting that under the federal common law, punitive damages are recoverable in the absence of actual damages only where authorized by statute). They are awarded at the discretion of the trier of fact, whether judge or jury. See Restatement (Second) of Torts § 908 cmt.d. Finally, punitive damages are not designed to be a form of supercompensation for plaintiffs. Rather, punitive damages “further a State’s legitimate interests in punishing unlawful conduct and deterring its repetition.” Gore, 517 U.S. at 568, 116 S.Ct. 1589. The Supreme Court has characterized this state interest as “quasi-criminal.” Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).
There is little reason to doubt that “[t]o the extent punitive damages are permitted in contract actions, such an award is subject to the limitations of the federal Constitution.” 11 Corbin on Contracts § 59.2 (2013). The Cardholders allege that the penalty fees in this case are purely punitive — the banks are compensated for the lost time value and collection costs associated with any breach by high penalty interest rates, making the overage charges a form of double-dipping. But considering that the penalty clauses at issue originate from the parties’ private — albeit adhesive — contracts, they are distinct from the jury-determined punitive damages awards at issue in Gore and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).
We therefore conclude that the due process analysis developed in the context of jury-awarded punitive damages is not applicable to contractual penalty clauses. See, e.g., Priebe & Sons, Inc. v. United States, 332 U.S. 407, 413, 68 S.Ct. 123, 92 L.Ed. 32 (1947) (describing contractual penalties as oppressive and unjust based on common law of contracts, not constitutional principles).
B. Unfair Competition Law Claim
California’s Unfair Competition Law, Cal. Bus. & Prof.Code § 17200 et seq., makes violations of other state and federal laws “independently actionable as unfair competitive practices.” CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1107 (9th Cir.2007) (citation omitted). Because we conclude that the issuers’ conduct did not violate the National Bank Act or the DIDMCA, there is no derivative liability under the Unfair Competition Law.
*1028 V. Conclusion
Because constitutional due process jurisprudence does not prevent enforcement of excessive penalty clauses in private contracts, and the fees were permissible under the National Bank Act and the DIDMCA, the district court did not err in dismissing the complaint.
AFFIRMED.

. See, e.g., the Credit Card Accountability Responsibility and Disclosure Act (Credit CARD Act), Pub.L. No. 111-24, § 102(a), 123 Stat. 1734, 1739 (2009) (codified at 15 U.S.C. § 1637(k)(7)) (banning card issuers from charging more than one overlimil fee in a single billing cycle).

. All of the Appellees are governed by the National Bank Act with the exception of Washington Mutual Bank, which is instead subject to the DIDMCA.

. Some jurisdictions permit an award of punitive damages for nontortious breach of contract in certain limited circumstances, such as when the breach involves a wanton or malicious violation of a fiduciary duty. See, e.g., Brown v. Coates, 253 F.2d 36, 40-41 (D.C.Cir.1958) (holding punitive damages to be appro *1027 priate in a case involving a malevolent real-estate agent).